IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SONDA JANSEN, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )  Case No. 22-cv-136-DES |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
|       Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Sonda Jansen ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claims for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act (the "Act"). For the reasons explained below, the Court AFFIRMS the Commissioner's decision denying benefits.

**I.    Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). This process requires the Commissioner to

consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P., app. 1; (4) whether the claimant can perform her past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five.  *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007).  If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g).  The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020).  Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938).  In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted).  Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.    Claimant's Background and Procedural History

On June 12, 2020, Claimant applied for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Act. (R. 10, 208-23). Claimant alleges she has been unable to work since March 21, 2020, due to diabetes, high blood pressure, thyroid problems, anxiety, depression, back pain, an autoimmune disorder, and foot pain. (R. 208, 215, 273). Claimant was 59 years old on the date of the ALJ's decision. (R. 21, 35). She has a high school education and past work as a licensed practical nurse, quality assurance coordinator, and health services monitor. (R. 58, 274).

Claimant's claims for benefits were denied initially and on reconsideration, and she requested a hearing. (R. 69-118, 144-45). ALJ Michael Mannes conducted an administrative hearing and issued a decision on September 24, 2021, finding Claimant not disabled. (R. 10-21, 33-64). The Appeals Council denied review on March 24, 2022 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. §§ 404.981, 416.1481. Claimant filed this appeal on May 5, 2022. (Docket No. 2).

## III.    The ALJ's Decision

In his decision, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since the alleged onset date of March 21, 2020. (R. 13). At step two, the ALJ found Claimant had severe impairments of diabetes mellitus type II; essential hypertension; obesity, status post gastric bypass surgery; peripheral neuropathy; osteoarthritis of the bilateral knees; right foot degenerative joint disease, status post right foot surgery; lumbar spine degenerative disc disease, status post right L4-5 hemilaminectomy and synovial cyst excision. (R. 13). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 14-16).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with occasional climbing of ramps and stairs; occasional climbing of ladders, ropes, or scaffolds; and frequent balancing, stooping, kneeling, crouching, and crawling. (R. 16).

Based on the testimony of a vocational expert ("VE"), the ALJ concluded at step four that Claimant could return to her past relevant work as a quality assurance coordinator and health services monitor as actually and generally performed, and as a licensed practical nurse as generally performed. (R. 20). Accordingly, the ALJ concluded Claimant was not disabled. (R. 21).

## IV.   Issues Presented

Claimant contends the ALJ failed to properly evaluate her subjective symptoms. The Court finds the ALJ's consistency analysis is supported by substantial evidence.

## V.   Analysis – ALJ's Consistency Analysis Was Proper

Claimant specifically contends the ALJ erred in evaluating her subjective symptoms because he did not discuss the required factors and he ignored her strong work history. (Docket No. 11 at 2-11). Claimant's arguments are belied by the record.

The ALJ is required to consider Claimant's subjective complaints, or symptoms[1] in determining the RFC. 20 C.F.R. §§ 404.1529(a) & (d)(4), 416.929(a) & (d)(4). The Commissioner uses a two-step process when evaluating a claimant's symptoms.[2] SSR 16-3p, 2017 WL 5180304,

---

[1] Symptoms mean a claimant's "own description of [her] physical or mental impairment." 20 C.F.R. §§ 404.1502(i), 416.902(n).

[2] Tenth Circuit precedent characterizes this as a three-step process: (1) whether the claimant established a symptom-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some symptom of the sort alleged (a "loose nexus"); and (3) if so, whether, considering all objective and subjective evidence, the claimant's symptom was in fact disabling. *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen,* 834 F.2d 161, 163-64 (10th Cir. 1987)). The two-step analysis under SSR 16-3p comports with this prior, three-step process under *Luna*. *Paulek v. Colvin,* 662 F. App'x 593-94 (10th Cir. 2016) (unpublished). However, the term "credibility" is no longer used. SSR 16-3p at *2. For purposes of this opinion, the Court will refer to the process as a "consistency analysis."

at *2 (Oct. 25, 2017); *see also* 20 C.F.R. §§ 404.1529, 416.929.  First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities and could reasonably be expected to produce the symptoms alleged.  SSR 16-3p at *3.  Second, once such impairments are established, the ALJ must then evaluate the intensity and persistence of the symptoms, so he can determine how the symptoms limit the claimant's ability to work.  *Id.* at *4.

Factors the ALJ should consider as part of the symptom evaluation include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medications; (5) treatment aside from medication; (6) any other measures the claimant has used to relieve symptoms; and (7) other factors concerning functional limitations and restrictions due to the symptoms.  *Id.* at *7-8.  The ALJ's consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Cowan v. Astrue,* 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995).  The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulates so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  SSR 16-3p at *10.  Because consistency findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determination when supported by substantial evidence."  *Cowan,* 552 F.3d at 1190 (quoting *Kepler,* 683 F.3d at 391).

The Court finds no error in the ALJ's consistency analysis.  In his written decision, the ALJ thoroughly summarized Claimant's administrative hearing testimony.  (R. 17).  As relevant to this appeal, the ALJ specifically acknowledged Claimant's testimony that she cannot walk very

5

far; can stand for 20 minutes before needing to change positions; experiences shooting pain in her right foot if she is on her feet too much; experiences daily tingling, burning, and swelling in her feet; and that her knees give out causing frequent falls. (R. 17). The ALJ then found Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*) In reaching this conclusion, the ALJ discussed numerous inconsistencies between Plaintiff's subjective complaints and the evidence of record, including: (1) Claimant rarely, if ever, complained of swelling in her feet; (2) Claimant rarely, if ever, exhibited edema on examination; (3) Claimant rarely, if ever, exhibited any deficits in reflexes or sensation on examination; (4) Claimant's ability to help her son clear his belonging out of his house after a fire in June 2020; (5) Claimant's ability to vacation in August 2020, which she stated required a lot of walking up and down hills; (6) Dr. Emory Hilton's lack of treatment changes in response to Claimant's report of inability to pick up her toes properly and falling episodes in August 2020; (7) Claimant's failure to follow-up with Dr. Hilton after August 2020; (8) Claimant's normal gait, stance, and lower extremity strength at a physical examination on December 11, 2020; (9) Claimant's reports of significantly improved back pain after surgery in December 2020; (10) Claimant's ability to perform low impact exercise and walk in place at home as reported in February 2021; (11) Claimant's normal range of motion in her knees at an examination on July 26, 2021; (12) Claimant's consistent ability to ambulate without the use of an assistive device, orthosis, or special support for her right foot; (13) Claimant's lack of inpatient hospitalizations, emergent treatment, or medication side effects; and (14) the absence of activity restrictions from Claimant's treating providers. (R. 17-18).

Claimant asserts that the ALJ failed to consider the factors in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). As set forth above, the ALJ provided numerous reasons, supported by the record,

for finding Claimant's symptoms were not as severe or functionally limiting as alleged.  The ALJ's thorough analysis reflects that he considered the location, duration, frequency, and intensity of Plaintiff's symptoms (R. 17); precipitating and aggravating factors (*Id*.); the side effects of medications (R. 18); her treatment aside from medication (*Id.*); and other factors, including her treating providers examination findings (R. 17-18).  In any event, a "formalistic factor-by-factor recitation of the evidence" is not required, "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's" symptoms.  *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000).  Here, the ALJ linked his consistency findings to the evidence and provided clear and specific reasons for his determination in compliance with the directives of *Kepler* and its progeny, SSR 16-3p, and the regulations.  Claimant simply disagrees with the ALJ's interpretation of the evidence.  However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."  *Cowan,* 552 F.3d at 1185 (10th Cir. 2008).  Moreover, even if the evidence could support a different finding, the Court cannot "displace the agency's choice between two fairly conflicting views . . . ."  *Id.*  Because Claimant points to no evidence the ALJ overlooked, her arguments amount to a request that the Court reweigh the evidence and interpret in her favor, which it cannot do.  *Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for that of the Commissioner's." (citations omitted).

      Claimant further asserts the ALJ did not acknowledge or discuss her strong work history, which Claimant contends is a credibility enhancing factor. (Docket No. 11 at 10-11).  Although the ALJ did not explicitly discuss Claimant's work history in the paragraphs setting forth his

7

consistency analysis, the ALJ did not omit consideration of Claimant's history work from his decision. Thus, there is no error. The ALJ clearly considered Claimant's work history at steps one and four of the sequential evaluation, noting the work Claimant engaged in after her alleged onset date at step one (R. 13) and her past relevant work at step four (R. 20). Even though this work history was not discussed as part of the ALJ's consistency analysis, the ALJ is not required to discuss every piece of evidence he considered. *See Bell v. Colvin,* 645 F. App'x 608, 613 (10th Cir. 2016) (unpublished) (factors the claimant "contends were ignored by the ALJ include . . . her good work history," but the ALJ "is not required to discuss every piece of evidence" and the court declined to reweigh evidence even assuming the factors were relevant (quoting *Wall v. Astrue,* 561 F.3d 1048, 1067 (10th Cir. 2009).

VI.   **Conclusion**

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is AFFIRMED.

SO ORDERED this __25th__ day of September, 2023.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE